**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**KEITH MILES, JOSEPH HUTT,**
**and JOSHUA MCCLUSKY,**

                    **Plaintiffs,**

              **v.**                                              **5:20-CV-1591**
                                                                     **(FJS/TWD)**
**PEPSICO; BOTTLING GROUP, LLC;**
**BOTTLING GROUP, LLC** *doing business*
*as* **PEPSI BEVERAGES COMPANY; NEW**
**BERN TRANSPORTATION CORPORATION,**
*individually, and as a subsidiary of* **PEPSICO, INC.***;*
**SUPERVISOR TIM DORGAN,** *individually and*
*in his official capacity*; **SUPERVISOR KEITH**
**BROWN,** *individually and in his official capacity*;
**and DOES 1 THROUGH 100,**

                    **Defendants.**

---

**APPEARANCES**                                **OF COUNSEL**

**LAW OFFICES OF BONNER**                **CHARLES A. BONNER, ESQ.**
**& BONNER**                                    **A. CABRAL BONNER, ESQ.**
475 Gate Five Road
Suite 211
Sausalito, California 94965
Attorneys for Plaintiffs

**RYDER LAW FIRM**                         **JESSE P. RYDER, ESQ.**
6739 Myers Road
East Syracuse, New York 13057
Attorneys for Plaintiffs

**SCHRÖDER, JOSEPH &**                 **GINGER D. SCHRÖDER, ESQ.**
**ASSOCIATES, LLP**                        **LINDA H. JOSEPH, ESQ.**
394 Franklin Street
Second Floor
Buffalo, New York 14202
Attorneys for Defendants

**DYKEMA GOSSETT PLLC**        **RAYMOND A. COWLEY, ESQ.**
1400 North McColl Road
Suite 204
McAllen, Texas 78501
Attorneys for Defendants


**SCULLIN, Senior Judge**


## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiffs include one present and two former employees of Defendants Bottling Group, LLC and New Bern Transportation Corporation, which are subsidiaries of Defendant Pepsico. *See* Dkt. No. 1, Compl., at ¶¶ 24-28.  Plaintiffs generally allege that they experienced, among other things, racial discrimination, harassment, and retaliation at the hands of Defendants' employees while in the workplace.  *See generally id.*  They seek redress in the form of both compensatory and punitive damages for that misconduct, as well as declaratory and injunctive relief.  *See id.* at 62-64 (Prayer for Relief).


### II. BACKGROUND

The first named Plaintiff in this action, Plaintiff Miles, is an African American male, who began working in Defendants' Maintenance Equipment Management Department in December 2017; and he was nearly the only African American working in that location for Defendants.  *See id.* at ¶¶ 10, 25, 42.  He generally alleges that, because of his race, he was treated disparately compared to Caucasian co-workers.  *See id.* at ¶ 29.  Specifically, Plaintiff Miles alleges that, one month into his employment at that location, he witnessed Defendant Tim Dorgan, a supervisor, "screaming, cursing and degrading two co-workers," and he disclosed

what he saw to Defendants' Human Resources Department. *See id.* at ¶ 43. Following that

incident, Plaintiff Miles alleges that Defendant Dorgan attempted to write him up, but the write-

up was improper. *See id.* at ¶ 44. Plaintiff Miles eventually transferred to a different position

within the company, and he alleges he was improperly trained in that position. *See id.* at ¶¶ 48-

50, 56. He also allegedly worked with certain Caucasian employees who made mistakes and

blamed them on him, made racially offensive comments to him, used racial slurs toward him,

and harassed him when he made internal complaints. *See id.* at ¶¶ 51-56, 63-67, 70. Plaintiff

Miles additionally alleges that he was written up for every little mistake he or his co-workers

made, and his new supervisor, Defendant Keith Brown, appeared to have "a high tolerance for

racism but zero tolerance for anything [Plaintiff] Miles did, even knowing that he was never

trained properly and subjected to discrimination." *See id.* at ¶ 64. Defendants ultimately

terminated Plaintiff Miles's employment on December 12, 2019, after he received four verbal

and written warnings about subpar performance, which Plaintiff Miles contends only occurred

because "he was being set up to fail," while "others were not held accountable for their

performance deficienc[ies.]" *See id.* at ¶ 69.

Another Plaintiff in this action, Plaintiff McClusky, is a Caucasian male who worked

with Plaintiff Miles and complained about other co-workers' mistreatment of Plaintiff Miles and

rampant racism in the workplace to Human Resources. *See id.* at ¶ 72. Following his

disclosures to Human Resources, Plaintiff McClusky alleges that Defendants' employees

targeted and harassed him to the extent that he felt he "was forced to walk on eggshells in a

shady, corrupt company" to keep his job. *See id.* at ¶¶ 73-75. Plaintiff McClusky asserts that

he "has been searching for new employment for quite some time so he can remove himself from

the toxic and hostile environment" in Defendants' workplace. *See id.* at ¶ 74.

Finally, Plaintiff Hutt, another of Plaintiff Miles's Caucasian co-workers, also reported co-workers' mistreatment and harassment of Plaintiff Miles to Human Resources. *See id.* at ¶¶ 82-83. Plaintiff Hutt alleges that, as a result of his complaints, Defendants' employees made his work experience "unbearable[.]" *See id.* at ¶ 84. "After consulting with HR and his union representation numerous times, the problems of retaliation, alienation, hostile and toxic work environment were not resolved, [and Plaintiff] Hutt found himself unable and deterred from working [for Defendants] anymore." *See id.* at ¶ 84. Plaintiff Hutt therefore quit his employment and alleges that Defendants constructively terminated him. *See id.*

Plaintiffs commenced this action in December 2020, alleging the following nine causes of action against all Defendants:

> (1) Racial discrimination, harassment, and a hostile work environment pursuant to Title VII (All Plaintiffs)[1];
>
> (2)  Racial harassment, discrimination, and retaliation pursuant to 42 U.S.C. § 1981 (All Plaintiffs);
>
> (3) Racial discrimination, harassment, and a hostile work environment pursuant to Title VII (Plaintiff Miles);
>
> (4) Discrimination, harassment, and a hostile work environment pursuant to New York's Executive Law § 296 (All Plaintiffs);
>
> (5) Wrongful termination pursuant to Executive Law § 296 (Plaintiff Miles);
>
> (6) Constructive termination pursuant to Executive Law § 296 (Plaintiff Hutt);
>
> (7) Intentional infliction of emotional distress ("IIED") (All Plaintiffs);
>
> (8) Negligent infliction of emotional distress ("NIED") (All Plaintiffs); and

---

[1] The Court indicates in a parenthetical following each of the nine causes of action which Plaintiff(s) are asserting that claim.

(9) Negligent hiring, training, retention, and supervision (All
Plaintiffs).

*See id.* at ¶¶ 85-224.

Pending before the Court is Defendants' motion to dismiss Plaintiffs' seventh, eighth,

and ninth causes of action for IIED, NIED, and negligent hiring, training, retention, and

supervision, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Dkt. No.

20.

### III. DISCUSSION

#### A.  Motion to dismiss standard

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure, the court must accept the material facts alleged in the complaint as true and

draw all reasonable inferences in the plaintiff's favor."  *LMC Indus. Contractors, Inc. v.*

*Dominion Energy Transmission, Inc.,* No. 5:20-CV-677 (FJS/ATB), 2021 U.S. Dist. LEXIS

159441, *3 (N.D.N.Y. Aug. 24, 2021) (Scullin, S.J.) (citing *Interpharm, Inc. v. Wells Fargo*

*Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (citation omitted)).  However, the court is

not required to credit legal conclusions, bare assertions, or conclusory allegations.  *See Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678-81 (2009) (citations omitted).  As such, "[t]o survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  *Id.* at 678 (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S.] at

570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 [2007]).  A claim is facially plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.* (citing [*Twombly*, 550 U.S.] at 556, 127 S.

Ct. 1955, 167 L. Ed. 2d 929).  Therefore, under this standard, a plaintiff must support his claims

with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).  Thus, if the plaintiff has not "'nudged [his] claims' . . . 'across the line from conceivable to plausible,'" the court must dismiss the complaint.  *Id.* at 680 (quoting [*Twombly*, 550 U.S. at 570]).

### B.  Whether Plaintiff has plausibly stated a claim for IIED

Defendants contend that the Court must dismiss Plaintiffs' seventh cause of action for IIED because the alleged misconduct does not meet the rigorous standard for such claims in the employment context.  *See* Dkt. No. 20-1 at 8-11.  Plaintiffs respond that they "have more than sufficiently placed Defendants on notice that they maliciously engaged in a pattern of harassment, intimidation, humiliation and abuse," which caused Plaintiffs to suffer threats of demotion and actual demotion, termination, and psychological and emotional harm.  *See* Dkt. No. 24 at 6  (quotation and citations omitted).

"Under New York law, a claim of intentional infliction of emotional distress requires: '(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.'"  *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)); *accord Endemann v. City of Oneida*, No. 5:19-CV-1444 (MAD/ATB), 2020 U.S. Dist. LEXIS 59792, *17 (N.D.N.Y. Apr. 6, 2020) (D'Agostino, J.).  "'Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance.'"  *Hendricks v. Cty. of Oneida*, No. 6:11-CV-0007 (GTS/ATB), 2013 U.S. Dist. LEXIS 113716, *22 (N.D.N.Y. Aug. 13, 2013) (Suddaby, J.) (quoting *Stuto*,

164 F.3d at 827 (citing *Howell* [*v. New York Post Co.*], 612 N.E.2d 699, 81 N.Y.2d [115,] 121, 596 N.Y.S.2d 350 [(N.Y. 1993)])).  "Only where the alleged conduct 'has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society' will a court allow a claim for intentional infliction of emotional distress to go forward."  *Id.* at *22-*23 ([*Stuto*. 164 F.3d] at 827 (quoting *Howell*, 612 N.E.2d 699, 81 N.Y.2d at 122, 596 N.Y.S.2d 350)).  "'[I]n the employment context, th[os]e claims have been accompanied by allegations of sex discrimination, and more significantly, [sexual] battery.'"  *Knight v. Cty. of Cayuga*, No. 5:19-CV-712, 2019 U.S. Dist. LEXIS 175238, *41 (N.D.N.Y. Oct. 9, 2019) (Hurd, J.) (quoting *Gerzog v. London Fog Corp.*, 907 F. Supp. 590, 604 (E.D.N.Y. 1995) (collecting cases)).  "As a result, 'federal courts applying New York law regularly dismiss claims for intentional infliction of emotional distress.'"  *Id.* (quoting *Hendricks v. Cty. of Oneida*, 2013 U.S. Dist. LEXIS 113716, 2013 WL 4106488, at *15 (N.D.N.Y. Aug. 13, 2013)).

In Plaintiffs' complaint, Plaintiff Miles alleges that, over a course of several years, Caucasian co-workers and supervisors made "countless" racially derogatory remarks and used slurs toward him, including references that, because of his race, Plaintiff Miles was dealing drugs, "probably a slumlord," that he should be dropped off at the jail "with [his] people," and that his hair was "dirty like a mop."  *See* Dkt. No. 1 at ¶ 70.  Plaintiff Miles also alleges that he was written up for other workers' mistakes, that he was not allowed to park in the lot closest to his department, and that his co-workers would never tell him if he was doing something wrong so as to let the mistakes "pile up," thus warranting a write-up.  *See id.* at ¶¶ 55, 70.  Plaintiffs Hutt and McClusky allege that they "witnessed [Plaintiff Miles's] emotional collapse" and complained to Human Resources about the "racially hostile conduct."  *See id.* at ¶ 39.  As a

result of that disclosure, Plaintiffs Hutt and McClusky allege that Defendants targeted and harassed them as well as separated them from each other and their peers. *See id.* at ¶¶ 40-41.

With respect to Plaintiffs Hutt and McClusky, the Court finds that their allegations merely amount to harassment and bullying, which are not sufficient to state a claim for IIED. *See Peck v. Cty. of Onondaga*, No. 5:21-CV-651, 2021 U.S. Dist. LEXIS 157561, *48 (N.D.N.Y. Aug. 19, 2021) (Hurd, J.) (stating that allegations of insults, bullying, and general harassment are not sufficient to state a claim for IIED). Although Plaintiff Miles's allegations are more severe, and describe a discriminatory, hateful workplace, the Court finds that such verbal harassment, threats, and workplace interference are not so extreme as to go "beyond all possible bounds of decency" so as to meet the standard for asserting IIED claims in the employment context. Such vile conduct should not be tolerated in the workplace, but it is not synonymous with physical or sexual assault, which courts have found are so egregious that an IIED claim may stand. For these reasons, the Court grants Defendants' motion to dismiss Plaintiffs' seventh cause of action for IIED.

### C. Whether New York's Worker's Compensation Law precludes Plaintiffs' claims sounding in negligence

Defendants next contend that the Court should dismiss Plaintiffs' eighth and ninth causes of action because New York's Workers' Compensation Law provides the exclusive remedy for negligence complaints regarding the workplace. *See* Dkt. No. 20-1 at 11-14. Plaintiffs respond that New York's Workers' Compensation Law does not preclude their negligent hiring, training, retention, and supervision claim. *See* Dkt. No. 24 at 8-10.

"Under New York law, New York Workers' Compensation provides the exclusive remedy for negligence claims that accrue in the workplace." *Lai v. Delorio Foods Inc.*, No.

6:15-cv-0195 (LEK/TWD), 2016 U.S. Dist. LEXIS 25160, *23 (N.D.N.Y. Feb. 29, 2016) (Kahn, J.) (citing N.Y. Work. Comp. Law § 29(6) ("The right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee . . . when such employee is injured or killed by the negligence or wrong of another in the same employ.") (other citations omitted)). The Second Circuit has explicitly held that the exclusivity provision in the Workers' Compensation Law cannot bar Title VII harassment suits, "[b]ut it can and does bar state common law negligence claims" against employers. *Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997) (dismissing the plaintiff's negligence claim that the employer failed to supervise its employees as barred by the Workers' Compensation Law).  "The exclusivity of the workers' compensation scheme does not, however, preclude suit if the employer committed an intentional tort or another person committed such an intentional tort at the employer's direction." *Lai*, 2016 U.S. Dist. LEXIS 25160, at *24 (citing *Torres*, 116 F.3d at 640). "Moreover, the intentional tort exception is unavailable where a plaintiff pleads his or her claims in terms of negligence and not intentional wrong." *Id.* (citations omitted).

Additionally, "[u]nder New York law, a negligent hiring, supervision, and retention claim is covered by workers' compensation[.]" *Kujawski v. Liberty Mut. Ins. Co.*, No. 19-CV-603S, 2021 U.S. Dist. LEXIS 120332, *10 (W.D.N.Y. June 28, 2021) (citing *Tainsky v. Clarins USA, Inc.*, 363 F. Supp. 2d 578, 585-86 (S.D.N.Y. 2005)).  "The mere allegation of agency and liability is insufficient to state a claim under the Workers' Compensation Law for negligent supervision[.]" *Id.* (citations omitted).  "Under New York law, employees' actions within the scope of their employment do not subject their employers to liability for negligent hiring, training, supervision or retention." *LaFontaine v. City of New York*, No. 08 CV 1555 (SHS) (MHD), 2009 U.S. Dist. LEXIS 105838, *34 (S.D.N.Y. Sept. 30, 2009) (citing *Coville v. Ryder*

- 9 -

*Truck Rental, Inc.*, 30 A.D.3d 744, 745, 817 N.Y.S.2d 179 (3d Dep't 2006); *Talavera v. Arbit*,

18 A.D.3d 738, 738, 795 N.Y.S.2d 708, 709 (2d Dep't 2005)) (footnote omitted).  "Liability on

such claims typically arises only where an employee has engaged in conduct *outside* the scope

of his employment, such that the employer could not otherwise be held vicariously liable, and

liability is instead premised upon the employer's failure to act on a known risk concerning

conduct outside of an employee's duties."  *Nieves v. City of Rochester*, No. 08-CV-6537L, 2011

U.S. Dist. LEXIS 24594, *10 (W.D.N.Y. Mar. 10, 2011) (citations omitted).  For these reasons,

courts in this Circuit routinely dismiss employee-plaintiff's NIED and negligent supervision

claims against their employers.  *See, e.g.*, *Kujawski,* 2021 U.S. Dist. LEXIS 120332, at *10;

*Knight v. Cty. of Cayuga*, No. 5:19-CV-712, 2019 U.S. Dist. LEXIS 175238, *43-*44

(N.D.N.Y. Oct. 9, 2019) (Hurd, J.).

      In this case, Plaintiffs allege in their eighth cause of action for NIED that Defendants

owed them a duty of care to be free from discrimination, harassment, and a hostile work

environment and that Defendants breached that duty when they failed to protect Plaintiffs from

mistreatment, racial abuse, and threats.  *See* Dkt. No. 1 at ¶¶ 212-213.  According to Plaintiffs,

this mistreatment led to Plaintiff Hutt's decision to quit rather than face hostility and also caused

Plaintiff Miles's suffering an emotional meltdown in his car at work.  *See id.* at ¶ 213.  Initially,

the Court notes that Plaintiffs did not respond to Defendants' argument that the Court should

dismiss their eighth cause of action for NIED.  *See generally* Dkt. No. 24.  As such, the Court

dismisses Plaintiffs' eighth cause of action as abandoned.  *See Lewis v. Hanson*, No. 9:18-CV-

0012 (LEK/DJS), 2020 U.S. Dist. LEXIS 62451, *33 (N.D.N.Y. Apr. 9, 2020) (Kahn, S.J.).

Alternatively, the Court finds that their NIED claim does not fall within the intentional tort

exception to the exclusivity provision of the Workers' Compensation Law because Plaintiffs

have clearly alleged their NIED claim in terms of negligence.  Therefore, because Plaintiffs abandoned it and the Workers' Compensation Law is the exclusive remedy for Plaintiffs' NIED claim against Defendants, the Court grants Defendants' motion to dismiss Plaintiffs' eighth cause of action.

Turning to Plaintiffs' claim of negligent hiring, training, retention, and supervision, Plaintiffs allege that Defendants owed them a duty of care to be free from discrimination, harassment, and a hostile work environment and that they breached that duty by rehiring and promoting a Caucasian employee who made documented racist remarks to Plaintiff Miles and by taking "no action against other racist employees." *See id.* at ¶ 219.  Plaintiffs further allege that the employees were "racist at the time of hire" and that Defendants knew or should have known of the Caucasian employees' propensities for racist conduct.  *See id.* at ¶ 221.  However, Plaintiffs do not allege that Defendants engaged in this negligent conduct in hiring, supervising, or retaining employees outside of their scope of employment.  Plaintiffs also fail to allege that Defendants' employees acted outside of the scope of their employment when they threatened or harassed Plaintiffs.  For example, there are no allegations that Defendants' employees harassed Plaintiffs outside of work hours.  Accordingly, the Court finds that New York's Workers' Compensation Law precludes Plaintiffs' claim for negligent hiring, training, retention, and supervision.  As such, the Court grants Defendants' motion to dismiss Plaintiffs' ninth cause of action.

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss Plaintiffs' seventh, eighth, and ninth

causes of action, *see* Dkt. No. 20, is **GRANTED**; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Dancks for all further pretrial

matters.

**IT IS SO ORDERED.**

Dated:  March 16, 2022
          Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge